UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **PERMAPOST PRODUCTS, INC.**, 4066 SE Tualatin Valley Hwy., Hillsboro, OR 97123; **TREATED WOOD COUNCIL**, 1101 K Street NW, Ste. 700, Washington, DC 20005; **J. H. BAXTER & CO.**, P.O. Box 5902, San Mateo, CA 94402-0902; **CONRAD FOREST PRODUCTS, INC.**, 68765 Wildwood Dr., North Bend, OR 97459; **WESTERN WOOD PRESERVERS INSTITUTE**,7017 NE Hwy 99, Ste. 108, Vancouver, WA 98665; **WESTERN WOOD STRUCTURES, INC.**, 20675 SW 105th Ave., Tualatin, OR 97062; **RAILWAY TIE ASSOCIATION**, 115 Commerce Dr., Ste. C, Fayetteville, GA 30214; **SOUTHERN PRESSURE TREATERS' ASSOCIATION**, PO Box 1784, Starkville, MS 39760; and **CREOSOTE COUNCIL**, P.O. Box 160, Valencia, PA 16095 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. |
| | Plaintiffs, | |
| v. | ) | |
| **THE HONORABLE JOHN M. McHUGH**, Secretary of the Army, 101 Army Pentagon, Washington, DC 20310-0101; **U.S. ARMY CORPS OF ENGINEERS**, 441 G St. NW, Washington, DC 20314; **NATIONAL MARINE FISHERIES SERVICE,** 1315 East-West Highway, Silver Spring, MD 20910; and **PENNY S. PRITZKER**, Secretary of Commerce, 1401 Constitution Ave. NW, Washington DC 20230, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| | Defendants | |

Civil No.

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

Action for Declaratory and Injunctive Relief to Remedy Violations of the Administrative Procedure Act, 5 U.S.C. §§551-706; the Endangered Species Act, 16 U.S.C.§1536; the Regulatory Flexibility Act, 5 U.S.C. §§601 *et seq.*, and Title 33 Code of Federal Regulations §330.5 adopted under the Clean Water Act, 33 U.S.C. §1344

For their complaint herein, plaintiffs allege as follows:

## INTRODUCTION

1.  The plaintiffs in this case are manufacturers, sellers and users of pressure-treated wood

throughout the United States, along with national and regional trade associations representing

Page 1 - Complaint For Declaratory and Injunctive Relief

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax: 703-870-7347  ●  E-mail: markrutzick@rutzick.com

manufacturers, distributors and suppliers of pressure-treated wood.  Plaintiffs have filed this action seeking declaratory and injunctive relief against the Honorable John M. McHugh, Secretary of the Army, and the U.S. Army Corps of Engineers (USACE), to remedy violations of the rulemaking and rational decision-making requirements of the Administrative Procedure Act (APA), 5 U.S.C.§§ 551-706; the USACE regulations at 33 C.F.R. § 330.5(c)(1)(I) adopted under the Clean Water Act, 33 U.S.C. §1344; the Regulatory Flexibility Act (RFA), 5 U.S.C. §§601 *et seq*. and the Endangered Species Act (ESA), 16 U.S.C.§§1531 *et seq*.  In 2012 USACE adopted five-year nationwide general permits (NWPs) under 33 U.S.C. §1344 for the discharge of dredged or fill material into the navigable waters of the United States.  This case challenges USACE's approval of two separate "regional conditions" to the nationwide permits adopted for Alaska and Oregon, which prohibit or restrict the use of treated wood in or over navigable waters of the United States in those areas.  These regional rules are currently harming and threatening to harm the plaintiffs, and if comparable regional rules were to be adopted in the future by USACE in other states and regions of the country, the harm to the plaintiffs would be even greater.

2.  Plaintiffs also seek declaratory and injunctive relief against defendants McHugh, USACE, defendant Penny S. Pritzker, Secretary of Commerce and defendant National Marine Fisheries Service (NMFS), an agency within the Commerce Department that is under the supervision of defendant Pritzker, to remedy violations of the ESA, 16 U.S.C.§1536, and the rational decision-making requirements of the APA, 5 U.S.C.§§701-706 by USACE and NMFS in the issuance of USACE procedures and a NMFS biological opinion effectively barring treated wood from the market

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347  ●  E-mail:  markrutzick@rutzick.com

in Oregon for new recreational boat docks and for maintenance, repair or replacement of all existing in-water or overwater structures, where treated wood has been the dominant and preferred building material for decades.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question), §2201 (declaratory relief) and §2202 (injunctive relief), and 16 U.S.C. §1540(c) and (g).  Venue in this district is proper under 28 U.S.C. §1391(e) and 16 U.S.C. §1540(g) because the defendants reside in this district, the violations occurred in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.  Plaintiffs have transmitted written notice of these claims to the defendants by certified mail, and more than sixty days has passed since Defendants received these notices.

## PARTIES

4.  Plaintiff Permapost Products, Inc. (Permapost), based in Hillsboro, Oregon, is a small business as determined by the rules of the Small Business Administration (SBA), which produces and fabricates pressured-treated wood products for sale to commercial and industrial customers in Oregon and Alaska, and elsewhere, and also provides custom production and fabrication services for untreated wood products owned by customers.  Permapost manufactures a large line of pressure-treated forest products including timber highway and pedestrian bridges, retaining walls, picnic tables and shelters, lighting standards, and marinas.  Their products are used by customers and end-users for park management, recreation, wildlife management, docks and piers.  Permapost's

Page 3 - Complaint For Declaratory and Injunctive Relief

customers are commonly required to obtain permits from the USACE to install treated-wood materials in and over aquatic environments in Oregon and Alaska.  Since adoption of the USACE regional conditions for Oregon and Alaska challenged in this case, Permapost has lost sales to customers in Oregon and Alaska due to the inability of end-users in those two states to install treated wood products under a Clean Water Act general permit, which has had the effect of forcing end-users to select construction materials other than treated wood for use in and over aquatic environments in those states.  For example, in July 2013, after Permapost submitted a contract bid to provide treated wood to construct five bridges on Forest Service land, a Forest Service engineer instructed Permapost to resubmit the bid without treated wood based on the USACE treated wood restrictions challenged in this case.  The decisions challenged in this case have caused financial loss to Permapost and threaten further financial loss to the company.

5. The Treated Wood Council (TWC), based in the District of Columbia, is a not-for-profit corporation organized in 2003 under the laws of the State of Florida, serving over 480 companies and organizations throughout the United States, including plaintiffs Baxter and Conrad, that produce pressure-treated wood products, manufacture wood preservatives, harvest and saw wood or serve the treated wood industry.  The TWC monitors and responds to legislation and regulatory activities related to the treated wood industry, including environmental issues, and advocates for environmentally sound standards for treated wood manufacture and use.

6. J. H. Baxter & Co. (Baxter), which is based in San Mateo, California, and also operates manufacturing facilities in Oregon, is a small business as determined by SBA rules, and is certified

Page 4 - Complaint For Declaratory and Injunctive Relief

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347   ●   E-mail:  markrutzick@rutzick.com

by the California Public Utilities Commission and the State of Oregon as a Woman-Owned Business Enterprise.  Baxter has been in business selling wood products since 1896.  Among the many treated wood products Baxter produces are products for aquatic use including bulkheads, decks, docks, marinas, pilings, piers, wharfs and bridges.  Many public and private ports on the West Coast use its products.  Baxter treats its wood products with a wide variety of oil-borne and water-borne products.  Baxter sells to wholesale customers in Oregon and Alaska, and also sells directly to end-users in Oregon.  Many of the projects that involve the use of its treated wood products require Clean Water Act permits from the USACE.  Baxter's customers and end-users have reported increasing reluctance by federal regulatory authorities in Oregon to approve the use of treated wood in aquatic applications, and since the USACE Oregon and Alaska permit conditions took effect in 2012, Baxter has lost business from customers and end-users who are unable to use treated wood in or over water due to the exclusion of these products from the USACE's Clean Water Act general permits.  Baxter is threatened with additional future business losses as a result of the USACE decisions challenged in this case.

7.  Conrad Forest Products, Inc. (Conrad), based in North Bend, Oregon, is a small business as determined by SBA rules.  Conrad operates manufacturing facilities in North Bend, Oregon, Rainier, Oregon and Arbuckle, California.  Conrad has been engaged since 1979 in the business of producing pressure-treated preserved wood products that are used in bridges, docks, retaining walls, pedestrian boardwalks and habitat improvement projects.  A USACE permit under the Clean Water Act must be obtained before these structures can be built in aquatic environments.  Conrad has

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347   ●   E-mail:  markrutzick@rutzick.com

supplied products used in the construction of hundreds of bridges and other structures in Alaska and Oregon.  Conrad has observed that its customers are increasingly reluctant to specify treated wood in their contracts due to increasing regulatory burden imposed by federal regulatory agencies.  Conrad has found that while the U.S. Forest Service has traditionally had a strong preference for the use of treated wood in outdoor structures rather than competing steel structures,  recently Conrad has been advised by Forest Service engineering staff in Oregon that they are no longer allowed to specify treated wood in their outdoor structures.  The reason given is that the use of treated wood requires a special consultation with NMFS, and the Forest Service does not have the staff or funds to prepare for and conduct such consultations.  The need for such a special consultation results from the decisions challenged in this case, which exclude treated wood from the USACE general Clean Water Act Permits and from the blanket ESA protection under the SLOPES IV procedure described below.  The Forest Service is increasingly requiring that its projects be built with untreated wood, an inferior material which has a shorter useful life than treated wood and requires far more frequent replacement and maintenance, or with steel, a product that Conrad does not use, reducing the business opportunities for Conrad, causing financial loss and threatening further financial loss.

8.  Plaintiff Western Wood Preservers Institute (WWPI), based in Vancouver, Washington, is a non-profit member trade organization organized in 1947 under the laws of the State of Washington representing 25 companies that produce all types of pressure-treated wood products in western North America, and an equal number of suppliers, affiliates and other businesses with a stake in the continued manufacture of treated wood.  Among its members who operate in Oregon or

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347   ●   E-mail:  markrutzick@rutzick.com

Alaska, or sell treated wood to customers or end-users in Oregon or Alaska, are plaintiffs Permapost, Conrad, Baxter and Western Wood, and many other treated wood manufacturers including Allweather Wood Treaters (TrueGuard, LLC), Washougal, WA; Exterior Wood, Inc., Washougal, WA; McFarland Cascade, a Stella-Jones Company, Eugene, OR; Superior Wood Treating, Sumner, WA; Bridgewell Resources, LLC , Tigard, OR and Western Wood Preserving Co, Sumner, WA. Among its members who supply treating materials to the manufacturers of treated wood are:  KMG-Bernuth, Inc, Houston, TX; Lonza Wood Protection, Smyrna, GA; Nisus Corporation, Rockford, TN; Osmose, Inc, Griffin, GA; and Viance, LLC, Charlotte, NC.   WWPI addresses regulatory matters affecting its members, including environmental issues at the federal and state level.  WWPI has a long history working with federal and state regulatory agencies to promote environmentally-responsible practices in the manufacture, distribution and use of treated wood products.  WWPI has been engaged with the USACE and NMFS for almost two decades to seek development of environmentally sustainable standards for the use of treated wood in aquatic environments that may contain or support fish and wildlife species of concern to federal wildlife management agencies, including species protected under the ESA.

9.   WWPI has written, published and revised, with other industry groups, a set of Best Management Practices (BMPs) For the Use of Treated Wood in Aquatic and Wetland Environments. These BMPs have been endorsed and recommended by USACE and NMFS.  As part of developing the BMPs, WWPI created the BMP Mark Program. The BMP Mark Program is a fee-based license agreement ($300 per year renewed annually) between a member wood-preserving company and

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347   ●   E-mail:  markrutzick@rutzick.com

WWPI.  Participation in the BMP Mark Program authorizes companies to use the BMP trademark for the purpose of marketing their products and certifying they comply with the requirements of the BMPs as confirmed by an independent WWPI-approved third party inspection agency.  Any qualifying third party inspection agency that wishes to provide quality assurance and inspection services is also required to enter into a BMP Certification Mark Agreement (License Grant) with WWPI for an annual fee of $1,000.  In addition, the agency is required to pay WWPI an inspection volume fee of $0.02 per lineal foot of piling or round stock, $0.50 per thousand board feet of sawn material, and $0.50 per thousand square feet of plywood 3/8 inch basis produced by all treating companies participating in the BMP Mark Program.  Currently two inspection agencies and seven WWPI member treating companies participate in the BMP Mark Program.  Thus, WWPI receives income from every unit of treated wood sold by one of its members who participates in the BMP Mark Program. The BMP Mark Program currently generates $5,000-$7,000 dollars of revenue per year for WWPI with the potential to significantly increase in the future if more companies choose to join the program.  The loss of sales of treated wood by the WWPI members who participate in the BMP Mark Program that is resulting and threatened from the decisions challenged in this case is therefore directly causing financial loss to WWPI.  The challenged decisions threaten even greater loss in the future, if current members decided to drop out of the BMP Mark Program  as markets shrink for their products.

10.  Western Wood Structures, Inc. (Western Wood) is a small business under SBA rules which has been engaged since 1969 in the business of design, sale and installation of engineered

Page 8 - Complaint For Declaratory and Injunctive Relief

wood systems in 45 states and many countries around the world.  Virtually all of its structures are made with treated wood, which Western Wood purchases from suppliers; Western Wood does not manufacture treated wood products.  Among other specialties, Western Wood designs and supplies timber bridge systems for vehicular and pedestrian use, including installations for developments, municipalities, golf course and forest management needs, and has designed, supplied or installed more than 5,000 timber bridges since 1969.  Annually Western Wood receives and performs 70 or more contracts, and typically 15-20 of these contracts require Western Wood to perform the construction and installation of the bridge or other structure.  Most of its structures are out of doors, and many of these structures are in or over water.  A USACE permit under the Clean Water Act must be obtained before these in or over water structures can be built.  Western Wood has installed over 100 bridges for the U.S. Forest Service in Oregon and Alaska, including a recently-completed 280 foot span bridge in the Chugach National Forest in Alaska.  Western Wood has found that its customers, particularly including the U.S. Forest Service, are increasingly reluctant to specify treated wood in their contracts due to the need for individualized ESA consultation required to use treated wood for a project.  Western Wood has found that the Forest Service is increasingly requiring that its projects be built with untreated wood or steel, reducing the business opportunities for Western Wood and diminishing its present and future business.  Recently the State of Oregon has invited bids for projects specifying no treated wood, and has informed Western Wood that the USACE has prohibited use of treated wood.  On one recent job the Oregon Department of State Lands instructed Western Wood to remove treated wood from a project and to replace it with plastic.   On another

Page 9 - Complaint For Declaratory and Injunctive Relief

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347   ●   E-mail:  markrutzick@rutzick.com

recent occasion, a Portland-area parks and recreation district told Western Wood that it had been instructed not to use treated wood for a project, and it had therefore decided to build a steel bridge instead, precluding Western Wood from bidding on the project. Western Wood believes the USACE regional condition excluding treated wood from the standard Clean Water Act general permits is the principal cause of all these decisions. Western Wood also expects future loss of business due to the challenged Oregon and Alaska permit conditions.

11.    The Railway Tie Association (RTA), based in Fayetteville, GA, is a non-profit corporation organized under the laws of the state of Georgia in existence since 1919 to promote the economical and environmentally sound use of treated wood crossties, which have been central to North American railroads for more than 160 years. More than 689 million wood crossties are currently in use in more than 212,000 miles of railroad track in North America. RTA engages in research into crosstie design and conducts ongoing activities dealing with sound forest management, conservation of timber resources, timber processing, wood preservation and safety of industry workers. Plaintiff Baxter is a member of RTA.

12.    The Southern Pressure Treaters' Association (SPTA), based in Pineville, LA, is a non-profit trade association organized in 1954 under the laws of the State of Louisiana representing producers of industrial treated wood products, suppliers of industrial preservatives and preservative components, distributors, engineers, manufacturers, academia, inspection agencies and producers of untreated wood products located in the eastern half of the United States. The members specialize in the manufacture of pressure treated wood poles and wood cross arms for the electrical and

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347  ●  E-mail:  markrutzick@rutzick.com

telecommunications industries, timber piles, timbers and various other pressure treated industrial wood products for America's energy, construction and transportation infrastructure.

13. The Creosote Council (CC), headquartered in Valencia PA, is a non-profit corporation organized under the laws of Delaware (under the name Creosote Council III to distinguish it from former groups). CC represents the regulatory and legislative interests of companies that produce and/or use creosote as a wood preservative. Creosote, a complex mixture of variable composition, long has been registered by the U.S. Environmental Protection Agency (EPA) for use as a pressure-treatment wood preservative on railroad ties, marine and foundation piling, structural sawn wood timbers, posts, wood utility poles, and other industrial wood products. It is approved for use by EPA in aquatic environments without limitation.

14. Defendant John M. McHugh, Secretary of the Army, is the official charged with responsibility to implement the permit provisions of the Clean Water Act at issue in this case, and has supervisory responsibility over the USACE. The USACE administers those permit provisions under the supervision of Defendant McHugh. USACE and Secretary McHugh are jointly referred to hereafter as "USACE Defendants." Defendant NMFS is delegated with authority from the Secretary of Commerce to administer the ESA with respect to certain aquatic species. Penny S. Pritzker, Secretary of Commerce, is the official charged with responsibility to implement the ESA with respect to the matters assigned to the Secretary of Commerce by statute, and exercises supervisory responsibility over NMFS. NMFS and Secretary Pritzker are jointly referred to hereafter as "Commerce Defendants."

Page 11 - Complaint For Declaratory and Injunctive Relief

## STATUTORY AND REGULATORY BACKGROUND

15.  Treated wood is manufactured by pressure injection of a chemical preservative into raw wood, a process which can significantly increase the useful life of many common species of wood. Treated wood that is properly manufactured and installed can resist damage from termites and decay fungi for decades longer than untreated wood. Treated wood is used extensively in exterior applications throughout the United States for utility poles, railroad crossties, decks, fences, retaining walls, docks, piling, signposts, bridges, permanent wood foundations and general construction lumber.  The principal treating materials in use today in the United States include alkaline copper quaternary (ACQ), ammoniacal copper zinc arsenate (ACZA), copper azole (CA-B & CA-C), chromated copper arsenate (CCA), DCOI/imidacloprid/stabilizer (EL2), propiconazole tebuconazole imidacloprid (PTI), copper naphthenate, creosote, pentachlorophenol (Penta), micronized copper azole (MCA) and micronized copper quaternary (MCQ).  Most treated wood products used in the United States originate in western and southern states, and are distributed and resold in all 50 states and many foreign countries.

**Allegations Concerning Clean Water Act**

16.  The Clean Water Act, 33 U.S.C. §1344, authorizes the Secretary of the Army to issue permits "for the discharge of dredged or fill material into the navigable waters at specified disposal sites," and 33 U.S.C. §1344(e) grants the Secretary of the Army power to issue "general permits on a State, regional, or nationwide basis" for up to five years:

> (1) In carrying out his functions relating to the discharge of dredged or fill material under this section, the Secretary may, after notice and

Page 12 - Complaint For Declaratory and Injunctive Relief

opportunity for public hearing, issue general permits on a State, regional, or nationwide basis for any category of activities involving discharges of dredged or fill material if the Secretary determines that the activities in such category are similar in nature, will cause only minimal adverse environmental effects when performed separately, and will have only minimal cumulative adverse effect on the environment. Any general permit issued under this subsection shall (A) be based on the guidelines described in subsection (b)(1) of this section, and (B) set forth the requirements and standards which shall apply to any activity authorized by such general permit.

17.  USACE has adopted regulations which "reserve[] the right (*i.e.*, discretion) to modify ... NWP authorizations.  Modification means the imposition of additional or revised terms or conditions on the authorization. ...The procedures for modifying ... NWP authorizations are detailed in §330.5." 33 C.F.R. §330.4(e).

18.  The USACE regulations delegate to USACE division engineers the authority to modify nationwide permits issued under 33 U.S.C. §1344(e) on a geographical basis through "regional conditions."  33 C.F.R. §330.4(e)(1).  Regional conditions are legally binding on permittees, who "must satisfy all ... conditions" on a nationwide permit in order to rely on the permit.  33 C.F.R. §330.4(a).

19.  On February 16, 2011, USACE published a notice in the Federal Register announcing proposed nationwide permits for the five-year period 2012-17.  76 Fed. Reg. 9174.

20.  On February 25, 2011, the Portland District of USACE, whose regulatory jurisdiction encompasses the State of Oregon, put a notice in the "Regulatory Mission" section of its website, within the "Public Notices" subsection, which announced proposed regional conditions applicable to activities within the state of Oregon, including a proposed regional condition stating "Permittee

Page 13 - Complaint For Declaratory and Injunctive Relief

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347  ●  E-mail:  markrutzick@rutzick.com

shall not allow wood products treated with biologically harmful leachable chemical components (e.g. copper, arsenic, zinc, creosote, chromium, chloride, fluoride, pentachlorophenol) to come in contact with waters or wetlands." The notice invited public comment through April 11, 2011, but did not offer the public an opportunity to request a public hearing on the proposal. On June 20, 2011 the Portland District put another notice on its website with revised proposed regional conditions, including revised language for the treated wood regional condition, invited public comment through July 19, 2011, but again did not offer the public an opportunity to request a public hearing on the proposal.

21. The Alaska District of the USACE, which has regulatory jurisdiction over the State of Alaska, prepared a public notice dated March 4, 2011 (POA-2011-6) presenting proposed regional conditions for Alaska, including a proposal to ban the use of creosote in fresh waters and to ban the use of pentachlorophenol in fresh water and marine waters. The notice invited public comment until April 18, 2011 but did not offer the public an opportunity to request a public hearing on the proposal. The Alaska District did not put the notice on its website, nor otherwise announce the proposed regional conditions to the public. The Alaska District distributed the notice only to addressees on an agency mailing list that may only have included federal and state resource agencies (since federal and state resource agencies were the only entities to submit comments on the proposed conditions). After the public comment period closed, the City and Borough of Juneau, AK complained to USACE that it and other Alaska municipalities had not received notice of the proposed conditions, and urged USACE to "carefully review its public notice procedures." In late 2011 USACE considered, and

Page 14 - Complaint For Declaratory and Injunctive Relief

then rejected, the idea of broadening the public notice and opening a new public comment period on the proposed conditions.

22.  On February 21, 2012 USACE published its 2012-17 nationwide permits in the Federal Register.  77 Fed. Reg. 10184.

23. On March 16, 2012 Brig. Gen. John R. McMahon, Commanding Officer and Division Engineer of the USACE Northwest Division, issued a Memorandum For Record approving the regional conditions for the Portland District.  Regional Condition 8 as approved states in part: "Permittee shall not allow wood products treated with biologically harmful leachable chemical components (e.g. copper, arsenic, zinc, creosote, chromium, chloride, fluoride, and pentachlorophenol) to be placed over or come in contact with waters or wetlands."  On March 19, 2012 the Portland District put a notice on its website announcing adoption of final regional conditions for Oregon.

24.  On March 19, 2012 Brig. Gen. Richard L. Stevens, Commanding Officer and Division Engineer of the USACE Pacific Ocean Division, issued a Memorandum For Commander, Alaska Engineer District stating: "I hereby issue NWPs numbers 1-25, 27-42 and 49-52 including the limitations, terms and conditions, and applicable regional conditions contained in enclosure 1, to take effect in Alaska District's area of operations."  A document entitled "Enclosure 1" which was attached to the decision contains Regional Condition C, stating in part:

> 1.  For new materials:
> ...
> (a) In fresh waters, wood structures treated with creosote or pentachlorophenol preservative shall not be used.

Page 15 - Complaint For Declaratory and Injunctive Relief

(b) In marine waters wood structures treated with pentachlorophenol preservative shall not be used.

(c) For marine installations with more than 50 pilings, or where current velocities are less than 10 cm/sec, a site-specific risk assessment shall be conducted to determine the potential adverse effects of using creosote or copper-related wood products.

On March 20, 2012 the Alaska District put a notice on its website announcing adoption of final regional conditions for Alaska.

**Allegations Concerning the 2009 NMFS Guidelines**

25.   In 2009 NMFS completed a rigorous review and evaluation of treated wood use in aquatic environments, based on a study conducted by Stratus Environmental Consulting, Inc., and adopted a set of guidelines entitled:  "The Use of Treated Wood Products in Aquatic Environments: Guidelines to West Coast NOAA Fisheries Staff for Endangered Species Act and Essential Fish Habitat Consultations in the Alaska, Northwest and Southwest Regions" (hereafter "NMFS Guidelines").  The NMFS Guidelines acknowledge the potential environmental effects of alternative building materials:

Stratus examined several potential alternate materials. The materials have advantages and disadvantages, which are detailed in that document. Some have their own pollutant concerns (such as leaching of potential endocrine disrupting chemicals from plastic based materials or zinc from cathode protected steel).  However, many of the dilution based arguments and assessments that apply to treated wood hold true for these materials as well. Other alternative materials may be considered nonleaching because they are made of, or coated with, nonreactive materials, but there is often a lack of data to evaluate these claims.

**Allegations Concerning SLOPES IV Procedures and Biological Opinion**

26.   Under the ESA, if a federal "action agency" determines the proposed action will have

Page 16 - Complaint For Declaratory and Injunctive Relief

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347  ●  E-mail:  markrutzick@rutzick.com

"no effect" on a listed species or designated critical habitat, the action agency is not required to initiate or complete an ESA consultation before proceeding with the action.  50 C.F.R. §402.14(a). A formal or informal ESA consultation is required for any proposed agency action that "may affect" a listed species or critical habitat.

27.   Under the ESA, when NMFS determines at the conclusion of a consultation that a proposed agency action is not likely to jeopardize any listed species, NMFS must issue an "incidental take statement" authorizing incidental take for the action, including reasonable and prudent measures to minimize take as well as nondiscretionary terms and conditions that the Federal action agency must comply with to carry out the reasonable and prudent measures.  16 U.S.C. §1536(b)(4).  These provisions have binding legal effect on the federal agency that receives the biological opinion.

28.   Beginning in 2001 USACE began to develop sets of "Standard Local Operating Procedures for Endangered Species" (SLOPES) for certain classes and categories of recurring activities that are subject to Portland District USACE regulatory jurisdiction in Oregon under the Clean Water Act and associated laws.  USACE initiated consultation with NMFS under section 7(a)(2) of the ESA, 16 U.S.C. §1536(a)(2),on at least three sets of SLOPES procedures between 2001 and 2008.  None of those SLOPES procedures prohibited use of treated wood in or over water bodies and wetlands.  On each set of SLOPES procedures, USACE received a biological opinion from NMFS under section 7(b) of the ESA, 16 U.S.C. §1536(b), concluding that the procedures were not likely to jeopardize the continued existence of endangered and threatened species.  None of the biological opinions on SLOPES I, II or III procedures included any incidental take provision

Page 17 - Complaint For Declaratory and Injunctive Relief

prohibiting use of treated wood.

29.  On November 2, 2011, USACE requested consultation with NMFS on a new set of

SLOPES Procedures (called SLOPES IV) for new recreational boat docks and ramps, and for

maintenance, rehabilitation, replacement or removal of "existing in-water or over-water structure[s]"

in Oregon, including the south shore of the Columbia River and its tributaries.  On April 5, 2012

NMFS issued an "Endangered Species Act Section 7 Formal Programmatic Opinion, Letter of

Concurrence, and Magnuson-Stevens Fishery Conservation and Management Act Essential Fish

Habitat Consultation for Revisions to Standard Local Operating Procedures for Endangered Species

to Administer Actions Authorized or Carried Out by the U.S. Army Corps of Engineers in Oregon

(SLOPES IV In-water Over-water Structures)," concluding that the SLOPES IV Procedures are not

likely to jeopardize the continued existence of endangered or threatened species (SLOPES IV

Biological Opinion).

30.  The documentary record suggests that during the SLOPES IV consultation, NMFS

dictated to USACE a set of "design criteria" for the projects subject to the SLOPES IV Procedures.

USACE explained:   "Our staff has also coordinated on a set of design criteria ..., which the Corps

understands are intended to minimize the adverse effects from the four categories of actions. The

Corps agrees to apply these design criteria in relevant part to every action authorized or carried out

under the revised SLOPES opinion."  Design Criteria 21 and 26 written by NMFS and imposed on

USACE prohibit all use of treated wood.  In the SLOPES IV Biological Opinion, NMFS gave the

Design Criteria additional legally-binding effect by requiring that USACE "shall ... [i]mplement

Page 18 - Complaint For Declaratory and Injunctive Relief

appropriate design criteria for each activity or attach them as required conditions of a permit," SLOPES IV Biological Opinion at 105, and by requiring that USACE must "ensure that ... the action is carried out consistent with the proposed design criteria" *Id*. at 70. The coercive legal effect of the SLOPES IV Procedures on plaintiffs and the public is the result of the combined actions of the USACE and NMFS. Both the USACE and NMFS are the direct cause of the injuries imposed on plaintiffs by the SLOPES IV Procedures and SLOPES IV Biological Opinion.

31. In the SLOPES IV Biological Opinion NMFS not only effectively prohibited all use of treated wood, but also intervened in the commercial marketplace by advocating use of alternative building products that compete in the marketplace against treated wood, going so far as to actually list telephone numbers of specific distributors of such competing products and making starkly clear its disapproval of treated wood as a building material in or over water:

> For alternatives sources of structural lumber and pilings designed for industrial and marine applications, but not based on pesticide-treated wood, including silica-based wood preservation, improved recycled plastic technology, and environmentally safe wood sealer and stains, see, *e.g.*, Resco Plastics (Coos Bay, Oregon; ph. 541.269.5485) and American Plastic Lumber (Shingle Springs, California; ph. 530.677.7700) for lumber from recycled plastic; Plastic Pilings, Inc. (Rialto, California; ph. 909.874.4080) for structural and non-structural lumber from recycled plastic; Timbersil (Placentia, California; ph. 714.223.1804) for outdoor lumber treated with silica; Kebony (ph. 888.914.9995) for outdoor lumber impregnated with a resin from furfuryl alcohol, a byproduct of sugar production; and Timber Pro Coatings (Portland, Oregon; ph. 503.232.1705) for a silica-based internal wood stabilizer, and a low-VOC wood sealer/stain. The use of trade, firm, or corporation names in this Opinion is for the information and convenience of the action agencies, and does not constitute an official endorsement or approval by the U.S. Department of Commerce or NMFS of any product or

Page 19 - Complaint For Declaratory and Injunctive Relief

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347   ●   E-mail:  markrutzick@rutzick.com

service to the exclusion of others that may be suitable.

SLOPES IV Biological Opinion at 11.  The boilerplate "disclaimer" inserted in the last sentence of this paragraph merely underscores that NMFS understood full well that it <u>was</u> providing "an official endorsement or approval" of the products offered by the businesses it named, and was conveying to any reader that NMFS recommends the alternative building materials, but not treated wood.

32.  Under the SLOPES IV Procedures as enforced through the SLOPES IV Biological Opinion, USACE and NMFS now effectively ban treated wood from new recreational boat docks and from maintenance, repair or replacement of all existing in-water or over-water structures in Oregon even though treated wood has traditionally been the most common building material for these structures.  The effective ban results from the fact that while the alternative building materials can be used in and over water without any individual permit approval by the USACE and without any consultation by NMFS, any proposed use of treated wood for these structures would require a builder to file a written application with USACE for an individual permit, which could not be issued unless and until USACE chose to initiate an individualized ESA consultation with NMFS, a process that frequently takes 6-12 months to complete at substantial expense to all parties involved.  In these circumstances, no economically-rational builder will seek to use treated wood on a project when the alternatives can be employed so much faster and cheaper.  The SLOPES IV Biological Opinion thus effectively bars treated wood from the market in Oregon for new recreational boat docks and maintenance, repair or replacement of all existing in-water or over-water structures.

33.  The actions, failures and omissions described above are causing current and threatened

Page 20 - Complaint For Declaratory and Injunctive Relief

injury to the Plaintiffs.  Builders, developers, landowners and construction contractors in Oregon who wish to take advantage of the USACE nationwide general permits and avoid a lengthy, expensive and uncertain individual permit application and ESA consultation process must choose a building material other than treated wood, and they are doing so.  Likewise, builders, developers, landowners construction contractors in Alaska seeking to use the expedited general permit process similarly must choose a building material other than wood treated with creosote or pentachlorophenol preservative, and are doing so.  Due to Portland District Regional Condition 8, the SLOPES IV Procedures and Biological Opinion and Alaska District Regional Condition C, treated wood producers, distributors, resellers and users (including plaintiffs Permapost, Baxter, Conrad, and Western Wood) have lost sales to customers in Oregon and Alaska who would have preferred to use treated wood for their projects in or over the waters and wetlands of Oregon and Alaska but were forced to use alternative materials to take advantage of the nationwide general permits and the NMFS SLOPES IV Biological Opinion.  For the same reasons, wood treating suppliers have lost sales to producers, and plaintiff WWPI has lost BMP Mark Program revenue. Plaintiffs have no remedy at law for these injuries.

## Claims for Relief

### FIRST COUNT
(Claims Against Portland District Regional Condition 8
and Alaska District Regional Condition C )

### FIRST CLAIM
(Violation of 5 U.S.C. §553(b) – Against USACE Defendants)

34.  Plaintiffs reallege the allegations in paragraphs 1-33 as if fully set forth herein.

Page 21 - Complaint For Declaratory and Injunctive Relief

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347   ●   E-mail:  markrutzick@rutzick.com

35.   The APA, 5 U.S.C. §551(4), defines a "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency ...."   In announcing adoption of new nationwide permits on February 15, 2012, USACE publicly stated that "[t]he process for issuing nationwide permits is a rulemaking activity."   The APA, 5 U.S.C. §551(5), defines "rule making" as "agency process for formulating, amending, or repealing a rule."   Portland District Regional Condition 8 and Alaska District Regional Condition C amend the nationwide permits, and therefore each is a "rule" under the APA which must be adopted through "rulemaking."

36.  The APA, 5 U.S.C. §553(b), requires that "[g]eneral notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law."   USACE did not publish a general notice of proposed rule making in the Federal Register for Portland District Regional Condition 8 or Alaska District Regional Condition C.   Neither of the Portland District notices of proposed regional conditions that were available on the district's website named any of the plaintiffs. The Alaska District notice of proposed regional conditions that was mailed to an unknown group of recipients (not including any of the plaintiffs) did not name any of the plaintiffs.

37.  USACE Defendants' failure to publish a general notice of proposed rule making in the Federal Register for Portland District Regional Condition 8 or Alaska District Regional Condition C in violation of 5 U.S.C. §553(b) is arbitrary and capricious, an abuse of discretion, not in

Page 22 - Complaint For Declaratory and Injunctive Relief

accordance with law, without observance of procedure required by law, in excess of statutory authority and short of statutory right under 5 U.S.C. §706(2).

## SECOND CLAIM
### (Violation of 5 U.S.C. §553(c) – Against USACE Defendants)

38.   Plaintiffs reallege the allegations in paragraphs 1-33 and 35 as if fully set forth herein.

39.   The APA, 5 U.S.C. §553(c), directs that "[a]fter notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose."

40.   Neither the Portland District nor the Alaska District complied with the requirements of 5 U.S.C. §553(c).   Because of the USACE's failure to provide the notice required by 5 U.S.C. §553(b), plaintiffs and their members were not given the legally required opportunity to participate in the rule making through submission of written data, views, or arguments.   Plaintiffs WWPI and CC became aware of the first Portland District notice proposing Regional Condition 8 from the local website, and submitted written comments to the Portland District.   None of the other plaintiffs, and none of the members of the plaintiff associations, submitted comments to the Portland District. None of the plaintiffs ever became aware of the proposal for Alaska District Regional Condition C until after USACE approved the Alaska District regional conditions and Regional Condition C was put into effect.

41.   The USACE failed to incorporate in the approved Portland District Regional Condition

Page 23 - Complaint For Declaratory and Injunctive Relief

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347   ●   E-mail:  markrutzick@rutzick.com

8 or Alaska District Regional Condition C "a concise general statement of their basis and purpose," and failed to include a response to the comments on Portland District Regional condition 8 including the comments submitted by WWPI and CC.

42.   USACE Defendants' failure to give Plaintiffs "an opportunity to participate in the rule making through submission of written data, views, or arguments" and to "incorporate in the rules adopted a concise general statement of their basis and purpose" in violation of 5 U.S.C. §553(c) is arbitrary and capricious, an abuse of discretion, not in accordance with law, without observance of procedure required by law, in excess of statutory authority and short of statutory right under 5 U.S.C. §706(2).

### THIRD CLAIM
(Violation of 5 U.S.C. §553(d) – Against USACE Defendants)

43.   Plaintiffs reallege the allegations in paragraphs 1-33 and 35 as if fully set forth herein.

44.   The APA, 5 U.S.C. §553(d), directs that "[t]he required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except—(1) a substantive rule which grants or recognizes an exemption or relieves a restriction; (2) interpretative rules and statements of policy; or (3) as otherwise provided by the agency for good cause found and published with the rule." USACE never published Portland District Regional Condition 8 or Alaska District Regional Condition C, and never served the documents on the Plaintiffs or anyone else. Neither Portland District Regional Condition 8 nor Alaska District Regional Condition C is "a substantive rule which grants or recognizes an exemption or relieves a restriction, [an] interpretative rule[] or [a] statement[] of policy."   USACE Defendants violated 5 U.S.C. §553(d) by putting

Page 24 - Complaint For Declaratory and Injunctive Relief

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347   ●   E-mail:  markrutzick@rutzick.com

Portland District Regional Condition 8 and Alaska District Regional Condition C into effect without publication or service of either rule.

45.  USACE Defendants' failure to publish or serve Portland District Regional Condition 8 or Alaska District Regional Condition C before putting the rules into effect in violation of 5 U.S.C. §553(d) is arbitrary and capricious, an abuse of discretion, not in accordance with law, without observance of procedure required by law, in excess of statutory authority and short of statutory right under 5 U.S.C. §706(2).

**FOURTH CLAIM**

(Violation of 33 C.F.R. §330.5(c)(1)(I); failure to provide notice to known interested public and provide opportunity for public hearing – Against USACE Defendants)

46.  Plaintiffs reallege the allegations in paragraphs 1-33 as if fully set forth herein.

47.  USACE regulations impose additional duties on the agency beyond those required by the APA.  Concurrent with public notice of the proposed nationwide permits, USACE "must notify the known interested public by a notice issued at the district level [of] proposed regional conditions ... developed by the division engineer."  33 C.F.R. §330.5(b)(2)(ii).   USACE must "circulate a notice to the known interested public to solicit comments and provide the opportunity to request a public hearing."  33 C.F.R. §330.5(c).   The agency must "[p]repare supplemental documentation for any modifications or revocations that may result through assertion of discretionary authority.  Such documentation will include comments received on the district public notices and a statement of findings showing how substantive comments were considered."  *Id*.

48.  USACE Defendants violated 33 C.F.R. §330.5(c) with respect to Portland District

Page 25 - Complaint For Declaratory and Injunctive Relief

Regional Condition 8.  The Portland District did not "circulate a notice [of proposed regional conditions] to the known interested public to solicit comments."  Posting a notice in the regulatory subsection of the district's website is not "circulat[ing]" the notice, and does not represent any attempt to make actual contact with "the known interested public" as the rule requires.  The Portland District has been aware for many years that the treated wood industry is part of the "known interested public," but no effort was made to contact any of the Plaintiffs.  In addition, the Portland District never informed the public, through its notices or otherwise, that members of the public had a legally-guaranteed "opportunity to request a public hearing" as the rule provides.

49.  USACE Defendants also violated 33 C.F.R. §330.5(c) with respect to Alaska District Regional Condition C.  The Alaska District did not even place its notice on its website, but instead mailed the notice to addressees on an agency mailing list, which did not include any of the Plaintiffs. The Alaska District knew or should have known that the treated wood industry is part of the "known interested public," but the Alaska District made no effort to contact any of the Plaintiffs.  The Alaska District also never informed the public, through its notices or otherwise, that members of the public had a legally-guaranteed "opportunity to request a public hearing" as the rule provides.

50.  USACE Defendants' failure to provide adequate notice and opportunity to request a public hearing on the proposals to adopt Portland District Regional Condition 8 and Alaska District Regional Condition C, in violation of 33 C.F.R. §330.5, is arbitrary and capricious, an abuse of discretion, not in accordance with law, without observance of procedure required by law, in excess of statutory authority and short of statutory right under 5 U.S.C. §706(2).

Page 26 - Complaint For Declaratory and Injunctive Relief

## FIFTH CLAIM

(Violation of Endangered Species Act, 16 U.S.C. §1536(a)(2) – Failure to Initiate Consultation on Portland District Regional Condition 8 and Alaska District Regional Condition C – Against USACE Defendants)

51.  Plaintiffs reallege the allegations in paragraphs 1-33 as if fully set forth herein.

52.  The ESA, 16 U.S.C. §1536(a)(2), requires that "[e]ach Federal agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency (hereinafter in this section referred to as an 'agency action') is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [designated critical] habitat of such species ...."

53.  Regulations adopted by the U.S. Fish and Wildlife Service (FWS) and NMFS to implement 16 U.S.C. §1536(a)(2) require a federal agency to initiate consultation on a proposed agency action with FWS, NMFS or both agencies unless the federal agency makes a determination that the proposed agency action will have no effect on any species listed as endangered or threatened under the ESA or on any habitat of such species designated as critical under the ESA.  50 C.F.R. §402.14(a).

54.  USACE never made a determination that Portland District Regional Condition 8 and Alaska District Regional Condition C have no effect on listed species or designated critical habitat. USACE never initiated consultation with FWS or NOAA on the two regional conditions.  USACE Defendants' failure to initiate consultation with FWS and NMFS on the adoption of Portland District Regional Condition 8 or Alaska District Regional Condition C violates 16 U.S.C. §1536(a)(2).

55.  USACE Defendants' failure to initiate consultation with FWS and NMFS on the

Page 27 - Complaint For Declaratory and Injunctive Relief

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347   ●   E-mail:  markrutzick@rutzick.com

adoption of Portland District Regional Condition 8 or Alaska District Regional Condition C in violation of 16 U.S.C. §1536(a)(2) is arbitrary and capricious, an abuse of discretion, not in accordance with law, without observance of procedure required by law, in excess of statutory authority and short of statutory right under 5 U.S.C. §706(2).

## SIXTH CLAIM
(Regulatory Flexibility Act, 5 U.S.C. §§601 et seq. – Failure to Perform Required Regulatory Analysis – Against USACE Defendants)

56.  Plaintiffs reallege the allegations in paragraphs 1-33 as if fully set forth herein.

57.  Under the Regulatory Flexibility Act, 5 U.S.C. §§ 601 *et seq.*, when an agency is required to publish a notice of rulemaking for any proposed or final rule, it must prepare and make available for public comment a regulatory flexibility analysis that describes the effect of the rule on small entities (i.e., small businesses, small organizations, and small government jurisdictions), unless the agency certifies that the rule will not have a significant economic impact on a substantial number of small entities.  Plaintiffs Permapost, Baxter, Conrad and Western Wood, along with the majority of members of the Plaintiff organizations – hundreds of companies – are small businesses as defined by the SBA who are likely to be harmed by USACE's adoption of Portland District Regional Condition 8 and Alaska District Regional Condition C.

58. USACE Defendants never certified under 5 U.S.C. §605 that Portland District Regional Condition 8 or Alaska District Regional Condition C "will not, if promulgated, have a significant economic impact on a substantial number of small entities."  USACE Defendants did not prepare a final regulatory flexibility analysis under 5 U.S.C. §604 on either Regional Condition.  USACE

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347  ●  E-mail:  markrutzick@rutzick.com

Defendants' failure to prepare the required final regulatory flexibility analysis violated the Regulatory Flexibility Act, 5 U.S.C.§604.

59.  USACE Defendants' failure to prepare the required final regulatory flexibility analysis on Portland District Regional Condition 8 and Alaska District Regional Condition C in violation of the Regulatory Flexibility Act, 5 U.S.C.§604, is arbitrary and capricious, an abuse of discretion, not in accordance with law, without observance of procedure required by law, in excess of statutory authority and short of statutory right under 5 U.S.C. §706(2).

**SEVENTH CLAIM**
(Arbitrary and Capricious Agency Decisionmaking – Inconsistent Regulatory Decisions and
Practices Among USACE Districts – Against USACE Defendants)

60.  Plaintiffs reallege the allegations in paragraphs 1-33 as if fully set forth herein.

61.  The APA requires that any agency decision must articulate a satisfactory explanation for the decision including a rational connection between the facts found and the choice made, and may not be arbitrary and capricious.  Further, an agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so.  Agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently.

62.  Plaintiff WWPI submitted comments to the Portland District noting that the Portland District shares regulatory authority with three other USACE districts that regulate the same or connected bodies of water, and that none of those three districts were proposing (or ultimately adopted) any regional condition limiting the use of treated wood.

63.  The Portland District regulates one side of the Columbia River dividing Oregon and

Page 29 - Complaint For Declaratory and Injunctive Relief

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347  ●  E-mail:  markrutzick@rutzick.com

Washington, while the Seattle District regulates the other side. The Seattle District did not propose or adopt a regional condition limiting use of treated wood in the Columbia River or its Washington-side tributaries, so two inconsistent regulatory regimes co-exist on the two sides of that major water body. Farther inland, near Umatilla, OR, the Columbia River turns and runs north through Washington State, where the Seattle District has sole regulatory authority and there is no USACE limit on use of treated wood on either side of the river. Near Kennewick, WA the massive Snake River, which rises in Wyoming, merges into the Columbia River. The Snake River is for much of its length within the exclusive jurisdiction of the USACE Walla Walla District, which does not have a regional condition limiting use of treated wood, and then for several hundred miles where the Snake River forms the boundary between Oregon and Idaho, the Portland District regulates one side of the river while the Walla Walla District regulates the other side. Thus, most of the water in the lower Columbia River and Lower Snake River where the Portland District has regulatory jurisdiction has traveled hundreds of miles through USACE districts that do not regionally limit use of treated wood.

64. The Portland District includes part but not all of the range of several endangered or threatened species including the Southern Oregon/Northern California Coast Coho Salmon Evolutionarily Significant Unit (ESU), Southern Oregon and Northern California Coastal Chinook Salmon ESU, Middle Columbia River Steelhead Distinct Population Segment (DPS), and the Snake River Basin Steelhead DPS. The Portland District shares regulatory power over the waters of these federally protected fish with the Seattle District, Walla Walla District and San Francisco District

Page 30 - Complaint For Declaratory and Injunctive Relief

(which regulates in California up to the Oregon border and has no regional limitation on the use of treated wood).  The Portland District's adoption of Regional Condition 8 has established inconsistent regulatory regimes within the waters that sustain these federally protected fish.

65.  Contemporaneous with the USACE Northwest Division Commanding Officer's approval of Portland District Regional Conditions, the Commanding Officer also approved regional conditions for the Seattle and Walla Walla Districts, which also lie within the USACE Northwest Division.  Neither the Seattle District nor the Walla Walla District proposed a regional condition limiting the use of treated wood.  The Northwest Division Commanding Officer determined, based on the recommendations of both districts, that without any limitation on the use of treated wood in those areas the nationwide permits "will cause only minimal adverse environmental effects when performed separately, and will have only minimal cumulative adverse effect on the environment," as required by the Clean Water Act, 33 U.S.C. §1344(e)(1).

66.  The Memorandum For Record signed by the Northwest Division Commanding Officer for the Portland District Regional Conditions does not explain why the use of treated wood in the Seattle and Walla Walla Districts will cause only minimal adverse environmental effects in those districts but in the Portland District a ban on the use of treated wood is necessary to meet the "minimal adverse environmental effects" statutory standard.  The Memorandum For Record for the Portland District does not even acknowledge the simultaneous approval of these inconsistent regulatory schemes.

67.  The Supplemental Decision Document (SDD) for the Portland District stated that the

Page 31 - Complaint For Declaratory and Injunctive Relief

Portland District had "reached out" to the Seattle, Walla Walla, Kansas City and Omaha districts "to determine whether we are moving in an unprecedented direction." The SDD erroneously informed the Northwest Division Commanding Officer that the Seattle District has a regional condition "restricting the use of chemically treated wood for over-water structures in marine environments and for decking on an over-water structure," although the Seattle District has never proposed or adopted a regional condition banning treated wood comparable to the Portland District proposal, and the Seattle District allows general permittees to use treated wood in accordance with Plaintiff WWPI's recommended Best Management Practices. The SDD obliquely reported that the Walla Walla District has an inconsistent rule, ignored the inconsistent standard in the San Francisco District, and never reported any information from Kansas City or Omaha. In reality, Portland District Regional Condition 8 is unprecedented for any USACE district, going far beyond the partial restrictions in Alaska. Thus, while acknowledging that USACE should consider whether the treated wood ban is unprecedented, the SDD misrepresented the unprecedented nature of Regional Condition 8 and never explained why the unprecedented ban in the Portland District is necessary to meet the statutory "minimal adverse environmental effects" standard.

68. The SDD for Alaska Regional Condition C, which did not have the benefit of public comments from any of the Plaintiffs due to the Alaska District's failure to solicit public comment on the proposed conditions, does not even acknowledge the possibility of inconsistent regulation in other districts, although marine waters and anadromous aquatic species in the Alaska District intermingle with waters and species that also fall within the jurisdiction of other USACE Districts

Page 32 - Complaint For Declaratory and Injunctive Relief

including Seattle, Portland and San Francisco.

69.  As a result of these flaws in the decisions to adopt Portland District Regional Condition 8 and Alaska District Regional Condition C, both decisions violate the rational decisionmaking requirements of the APA, are arbitrary and capricious, an abuse of discretion, not in accordance with law and in excess of statutory authority under 5 U.S.C. §706(2).

**EIGHTH CLAIM**
(Arbitrary and Capricious Agency Decisionmaking – Portland District Regional Condition 8 and Alaska District Regional Condition C – Lack of Rational Decisionmaking – Against USACE Defendants)

70.  Plaintiffs reallege the allegations in paragraphs 1-33 as if fully set forth herein.

71.  The NMFS Guidelines on treated wood recognize that many uses of treated wood in and over aquatic environments pose no detectable threat of harm to federally protected species and other aquatic resources, and recommend a site-specific review of the effects of treated wood only for projects that involve installation in water of more than 50 treated wood pilings.  The NMFS Guidelines represent the best scientific information currently available on the impacts of treated wood in aquatic environments.

72.  The Portland District disregarded the NMFS Guidelines in adopting Portland District Regional Condition 8 and instead chose to prohibit all use of treated wood both in and over waters of the United States even though the NMFS Guidelines recommended to the contrary.  The Portland District SDD inexplicably and incorrectly states: "Overall, the [NMFS Guidelines] document supports the Portland District's decision to restrict the use of chemically treated wood products as a [regional condition] by recognizing the potential for adverse effects on aquatic species, with a

Page 33 - Complaint For Declaratory and Injunctive Relief

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347  ●  E-mail:  markrutzick@rutzick.com

focus on anadromous salmonids."  Further, the Portland District SDD erroneously states that "[t]he Guidelines were never officially adopted as guidance within NMFS" when in fact the NMFS Guidelines were officially adopted as guidance within NMFS in 2009 and remain in effect currently.

73.  The Alaska District also disregarded the NMFS Guidelines in adopting Alaska District Regional Condition C prohibiting use of creosote-treated products in fresh waters and use of pentachlorophenol-treated products in fresh waters and marine waters.  The Alaska District SDD relied on the NMFS Guidelines to justify subsection 1(c) of Regional Condition C, which requires a site-specific assessment for marine installations with more than 50 pilings containing creosote or copper-based treating agents, but does not explain why the Alaska District ignored the NMFS Guidelines by prohibiting general permittees from any use of creosote-treated products in fresh waters and of pentachlorophenol-treated products in fresh waters and marine waters.

74.  By ignoring and contradicting the NMFS Guidelines, the decisions to adopt Portland District Regional Condition 8 and Alaska District Regional Condition C violate the rational decisionmaking requirements of the APA, are arbitrary and capricious, an abuse of discretion, not in accordance with law and in excess of statutory authority under 5 U.S.C. §706(2).

## SECOND COUNT
(Claims Relating to SLOPES IV Procedures and SLOPES IV Biological Opinion)

## NINTH CLAIM
(Endangered Species Act, 16 U.S.C. §1536(a)(2), and APA Rational Decisionmaking Requirements – Disregard of Best Scientific Information; Failure to Present Rational Basis for Decision – Against USACE Defendants)

75.  Plaintiffs reallege the allegations in paragraphs 1-33 as if fully set forth herein.

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347   ●   E-mail:  markrutzick@rutzick.com

76. Title 16 U.S.C.§1536(a)(2) requires that all federal agencies, including USACE, "shall use the best scientific and commercial data available" in conducting an ESA consultation. The 2009 NMFS Guidelines are the best scientific and commercial data available on the use of treated wood in aquatic environments. The NMFS Guidelines determine that the use of up to 50 treated wood pilings in or over waters of the United States has no appreciable effect on any endangered or threatened species. The Guidelines approve the use of treated wood up to that level without further review or consultation. No new evidence contradicts the NMFS Guidelines. In conducting the ESA consultation on the SLOPES IV Procedures, USACE disregarded the NMFS Guidelines by adding into the SLOPES IV Procedures a set of "proposed design criteria" for the projects to be authorized including  proposed design criteria 21 and 26 prohibiting all use of treated wood.

77. USACE failed to acknowledge that past SLOPES Procedures and biological opinions had approved use of treated wood in and over waters of the United States, and that the NMFS Guidelines endorsed the use of treated wood in aquatic environments below a significance level of 50 treated wood pilings; failed to acknowledge that the SLOPES IV Procedures with the design criteria banning all treated wood from new recreational boat docks and from the maintenance, rehabilitation, replacement or removal of existing in-water or over-water structures were a reversal of USACE's prior consistent policy; failed to identify any new information justifying this policy reversal; failed to explain the reasons for the policy reversal; failed to explain why the NMFS Guidelines and past SLOPES Procedures and biological opinions should no longer be followed; and failed to articulate or establish a rational connection between any facts found by USACE and the

Page 35 - Complaint For Declaratory and Injunctive Relief

choice made by the agency.

78.   By disregarding the NMFS Guidelines and banning all treated wood from new recreational boat docks and from the maintenance, rehabilitation, replacement or removal of existing in-water or over-water structures in Oregon that are subject to the SLOPES IV Procedures, including all uses below a significance level of 50 treated wood pilings that are permitted under the NMFS Guidelines, adoption of the SLOPES IV Procedures violated USACE's obligation in 16 U.S.C.§1536(a)(2) to "use the best scientific and commercial data available" in the SLOPES IV consultation.  USACE's violation of 16 U.S.C.§1536(a)(2) is arbitrary and capricious, an abuse of discretion, not in accordance with law, without observance of procedure required by law, in excess of statutory authority and short of statutory right under 5 U.S.C. §706(2).

79.   By ignoring and contradicting the NMFS Guidelines and past SLOPES Procedures and biological opinions without recognition or explanation of the reasons for doing so, the USACE decision to adopt the SLOPES IV Procedures violates the rational decisionmaking requirements of the APA, and is arbitrary and capricious, an abuse of discretion, not in accordance with law and in excess of statutory authority under 5 U.S.C. §706(2).

**TENTH CLAIM**
(Endangered Species Act, 16 U.S.C. §1536(a)(2) and APA Rational Decisionmaking
Requirements – Disregard of Best Scientific Information; Failure to Present Rational Basis for
Decision – Against Commerce Defendants)

80.   Plaintiffs reallege the allegations in paragraphs 1-33 as if fully set forth herein.

81.   Title 16 U.S.C.§1536(a)(2) requires that NMFS "shall use the best scientific and commercial data available" in conducting an ESA consultation.  This provision prohibits NMFS

Page 36 - Complaint For Declaratory and Injunctive Relief

from disregarding the best available scientific data.  The 2009 NMFS Guidelines are the best scientific and commercial data available on the use of treated wood in aquatic environments.  The NMFS Guidelines determine that the use of up to 50 treated wood pilings  in and over waters of the United States has no appreciable effect on any endangered or threatened species.  The Guidelines approve the use of treated wood up to that level without further review or consultation.  No new evidence contradicts the NMFS Guidelines.  In conducting the ESA consultation on the SLOPES IV Procedures, NMFS disregarded the NMFS Guidelines.

82.  Design criteria 21 and 26, which USACE incorporated into the SLOPES IV Procedures during the consultation, prohibit all use of treated wood.  These prohibitions on the use of treated wood are not mandated by any law.  USACE has the legal authority to issue a general permit under the Clean Water Act approving projects with treated wood – indeed, it routinely does so everywhere else in the United States.  USACE could exercise its existing authority to permit treated wood in any or all projects authorized under the SLOPES IV Procedures.  Since the NMFS Guidelines determine that use of up to 50 treated wood pilings in or over water has no effect on listed species, USACE could at any time, for an individual project or generally, amend the SLOPES IV Procedures to permit such use of treated wood without conducting any further consultation with NMFS.

83.  The NMFS Biological Opinion, including the incidental take statement incorporated therein, eliminated the USACE's existing legal authority to amend the SLOPES IV Procedures to permit use of treated wood, for an individual project or generally.  The NMFS Biological Opinion altered the legal regime in this manner by imposing a nondiscretionary command  that USACE must

Page 37 - Complaint For Declaratory and Injunctive Relief

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347  ●  E-mail:  markrutzick@rutzick.com

"apply design criteria 1 through 10 and 11 through 27 as enforceable permit conditions or as final project specifications" for every agency decision based on the SLOPES IV Procedures.  With this mandatory requirement, the NMFS Biological Opinion commanded that USACE could never permit use of treated wood for any project authorized under the SLOPES IV Procedures.  The NMFS Biological Opinion thus made the treated wood prohibitions permanent for the life of the SLOPES IV Procedures, unless and until USACE were to incur the substantial cost and time commitment to initiate a new ESA consultation on the SLOPES IV Procedures.  To further injure the business opportunities of treated wood producers and users, the NMFS Biological Opinion improperly and unlawfully endorsed competing non-treated-wood products by name, going so far as to include telephone numbers of the approved businesses.  NMFS' actions further injured the Plaintiffs beyond the injury caused by the SLOPES IV Procedures itself.

84. The NMFS Biological Opinion failed to acknowledge that the NMFS Guidelines endorse the use of treated wood in aquatic environments below a significance level of 50 treated wood pilings; that past SLOPES Procedures and past NMFS biological opinions had approved use of treated wood in and over waters of the United States, and that the SLOPES IV Biological Opinion prohibiting USACE from allowing any use of treated wood for new recreational boat docks and for the maintenance, rehabilitation, replacement or removal of existing in-water or over-water structures was a reversal of the prior consistent policy of both agencies; failed to identify any new information justifying this policy reversal; failed to explain the reasons for the policy reversal; failed to explain why the NMFS Guidelines and past SLOPES Procedures and biological opinions should no longer

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347   ●   E-mail:  markrutzick@rutzick.com

be followed; and failed to articulate or establish a rational connection between any facts found by NMFS and the choice made by the agency.

85.  By disregarding the NMFS Guidelines and imposing the obligation on USACE to ban all treated wood from new recreational boat docks and from the maintenance, rehabilitation, replacement or removal of existing in-water or over-water structures in Oregon that are subject to the SLOPES IV Procedures, including all uses below a significance level of 50 treated wood pilings that are permitted under the NMFS Guidelines, the NMFS SLOPES IV Biological Opinion violates NMFS' obligation in 16 U.S.C.§1536(a)(2) to "use the best scientific and commercial data available" in the SLOPES IV consultation and Biological Opinion.  NMFS' violation of 16 U.S.C.§1536(a)(2) in the SLOPES IV consultation and Biological Opinion is arbitrary and capricious, an abuse of discretion, not in accordance with law, without observance of procedure required by law, in excess of statutory authority and short of statutory right under 5 U.S.C. §706(2).

86.  By ignoring and contradicting the NMFS Guidelines and past SLOPES Procedures and biological opinions without recognition or explanation for doing so, the SLOPES IV Biological Opinion violates the rational decisionmaking requirements of the APA, and is arbitrary and capricious, an abuse of discretion, not in accordance with law and in excess of statutory authority under 5 U.S.C. §706(2).

## ELEVENTH CLAIM
(Regulatory Flexibility Act, 5 U.S.C. §§601 *et seq.* – Failure to Perform Required Regulatory Analysis – Against USACE Defendants)

87.  Plaintiffs reallege the allegations in paragraphs 1-33 and 57 as if fully set forth herein.

Page 39 - Complaint For Declaratory and Injunctive Relief

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347  ●  E-mail:  markrutzick@rutzick.com

88. USACE Defendants never certified under 5 U.S.C. §605 that the SLOPES IV Procedures "will not, if promulgated, have a significant economic impact on a substantial number of small entities." USACE Defendants did not prepare a final regulatory flexibility analysis under 5 U.S.C. §604 on the SLOPES IV Procedures. USACE Defendants' failure to prepare the required final regulatory flexibility analysis violated the Regulatory Flexibility Act, 5 U.S.C.§604.

89. USACE Defendants' failure to prepare the required final regulatory flexibility analysis on the SLOPES IV Procedures in violation of the Regulatory Flexibility Act, 5 U.S.C. §604, is arbitrary and capricious, an abuse of discretion, not in accordance with law, without observance of procedure required by law, in excess of statutory authority and short of statutory right under 5 U.S.C. §706(2).

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment as follows:

1. On the first claim, a declaration that USACE Defendants' failure to publish a general notice of proposed rule making in the Federal Register for Portland District Regional Condition 8 or Alaska District Regional Condition C in violation of 5 U.S.C. §553(b) is arbitrary and capricious, an abuse of discretion, not in accordance with law, without observance of procedure required by law, in excess of statutory authority and short of statutory right under 5 U.S.C. §706(2).

2. On the second claim, a declaration that USACE Defendants' failure to give Plaintiffs "an opportunity to participate in the rule making through submission of written data, views, or arguments" and to "incorporate in the rules adopted a concise general statement of their basis and

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347   ●   E-mail:  markrutzick@rutzick.com

purpose" in violation of 5 U.S.C. §553(c) is arbitrary and capricious, an abuse of discretion, not in accordance with law, without observance of procedure required by law, in excess of statutory authority and short of statutory right under 5 U.S.C. §706(2).

3.  On the third claim, a declaration that USACE Defendants' failure to publish or serve Portland District Regional Condition 8 or Alaska District Regional Condition C before putting the rules into effect in violation of 5 U.S.C. §553(d) is arbitrary and capricious, an abuse of discretion, not in accordance with law, without observance of procedure required by law, in excess of statutory authority and short of statutory right under 5 U.S.C. §706(2).

4.  On the fourth claim, a declaration that USACE Defendants' failure to provide adequate notice and opportunity to request a public hearing on the proposals to adopt Portland District Regional Condition 8 and Alaska District Regional Condition C, in violation of 33 C.F.R. §330.5, is arbitrary and capricious, an abuse of discretion, not in accordance with law, without observance of procedure required by law, in excess of statutory authority and short of statutory right under 5 U.S.C. §706(2).

5.  On the fifth claim, a declaration that USACE Defendants' failure to initiate consultation with FWS and NMFS on the adoption of Portland District Regional Condition 8 and Alaska District Regional Condition C violates 16 U.S.C. §1536(a)(2), and is arbitrary and capricious, an abuse of discretion, not in accordance with law, without observance of procedure required by law, in excess of statutory authority and short of statutory right under 5 U.S.C. §706(2).

6.  On the sixth claim, a declaration that USACE Defendants' failure to prepare the required

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347  ●  E-mail:  markrutzick@rutzick.com

final regulatory flexibility analysis on Portland District Regional Condition 8 and Alaska District Regional Condition C in violation of the Regulatory Flexibility Act, 5 U.S.C.§604, is arbitrary and capricious, an abuse of discretion, not in accordance with law, without observance of procedure required by law, in excess of statutory authority and short of statutory right under 5 U.S.C. §706(2).

7. On the seventh claim, a declaration that USACE Defendants' decisions to adopt Portland District Regional Condition 8 and Alaska District Regional Condition C violate the rational decisionmaking requirements of the APA, and are arbitrary and capricious, an abuse of discretion, not in accordance with law and in excess of statutory authority under 5 U.S.C. §706(2).

8.  On the eighth claim, a declaration that USACE Defendants' decisions to adopt Portland District Regional Condition 8 and Alaska District Regional Condition C violate the rational decisionmaking requirements of the APA, and are arbitrary and capricious, an abuse of discretion, not in accordance with law and in excess of statutory authority under 5 U.S.C. §706(2).

9.  On the ninth claim, a declaration that adoption of the SLOPES IV Procedures violated USACE's obligation in 16 U.S.C.§1536(a)(2) to "use the best scientific and commercial data available" in the SLOPES IV consultation, and violates the rational decisionmaking requirements of the APA, and is arbitrary and capricious, an abuse of discretion, not in accordance with law and in excess of statutory authority under 5 U.S.C. §706(2).

10.  On the tenth claim, a declaration that the NMFS SLOPES IV Biological Opinion violates NMFS' obligation in 16 U.S.C.§1536(a)(2) to "use the best scientific and commercial data available" in the SLOPES IV consultation and Biological Opinion, violates the rational decisionmaking

Page 42 - Complaint For Declaratory and Injunctive Relief

requirements of the APA, and is arbitrary and capricious, an abuse of discretion, not in accordance with law and in excess of statutory authority under 5 U.S.C. §706(2).

11. On the eleventh claim, a declaration that USACE Defendants' failure to prepare the required final regulatory flexibility analysis on the SLOPES IV Procedures in violation of the Regulatory Flexibility Act, 5 U.S.C.§604, is arbitrary and capricious, an abuse of discretion, not in accordance with law, without observance of procedure required by law, in excess of statutory authority and short of statutory right under 5 U.S.C. §706(2).

12. An order vacating and setting aside the USACE Defendants' decisions to adopt Portland District Regional Condition 8 and Alaska District Regional Condition C.

13. An order enjoining the USACE Defendants from implementing, citing or relying upon Portland District Regional Condition 8 and Alaska District Regional Condition C unless and until they comply with their legal obligations under Administrative Procedure Act, 5 U.S.C. §§551-706, the Endangered Species Act, 16 U.S.C.§1536(a)(2), and the Regulatory Flexibility Act, 5 U.S.C.§604.

14. An order vacating and setting aside the SLOPES IV Procedures and the SLOPES IV Biological Opinion.

15. An order enjoining all Defendants from implementing, citing or relying upon the SLOPES IV Procedures and the SLOPES IV Biological Opinion unless and until they comply with their legal obligations under the Endangered Species Act, 16 U.S.C.§1536(a)(2), Administrative Procedure Act, 5 U.S.C. §§701-706, and the Regulatory Flexibility Act, 5 U.S.C.§604.

Page 43 - Complaint For Declaratory and Injunctive Relief

16.   Awarding attorneys fees to plaintiffs under the Endangered Species Act, 16 U.S.C.§1540, the Equal Access to Justice Act, 28 U.S.C. §2412, and other applicable authority.

17.  Granting plaintiffs such further relief as may be just, proper and equitable.

Dated this 4th day of November, 2013.

By:  _____/s/ Mark C. Rutzick_____

Mark C. Rutzick, D.C. Bar No. 979547
markrutzick@rutzick.com
Mark C. Rutzick, Inc.
12402 Myra Virginia Ct.
Oak Hill, VA 20171
Telephone/Facsimile: (703) 870-7347
Attorney for Plaintiffs

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax:  703-870-7347   ●   E-mail:  markrutzick@rutzick.com