UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PERMAPOST PRODUCTS, INC.;** **TREATED WOOD COUNCIL**; **J. H. BAXTER & CO.**; **CONRAD FOREST PRODUCTS, INC.**; **WESTERN WOOD PRESERVERS INSTITUTE**; **WESTERN WOOD STRUCTURES, INC.**; **RAILWAY TIE ASSOCIATION**; **SOUTHERN PRESSURE TREATERS' ASSOCIATION**; and **CREOSOTE COUNCIL**, <br>                                    Plaintiffs, <br> v. <br> **THE HONORABLE JOHN M. McHUGH**; **U.S. ARMY CORPS OF ENGINEERS**; **NATIONAL MARINE FISHERIES SERVICE**; and **PENNY S. PRITZKER**, Secretary of Commerce, <br>                                    Defendants | Civil No. 13-1736-ESH <br><br> **PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO COURT ORDER** |

## Introduction

In *White Stallion Energy Ctr., LLC v. E.P.A.*, 2014 WL 1420294 (D.C. Cir. Apr. 15, 2014), the Court held that a petitioner (Julander Energy Company) lacked prudential standing to challenge a rule issued by the Environmental Protection Agency (EPA) adopting "emission standards for a number of listed hazardous air pollutants emitted by coal- and oil-fired electric utility steam generating units." *Id*. *1, 27-29. The Court's order for supplemental briefing asks the parties to address "whether this action is distinguishable from *White Stallion* and the cases on which it relied, including *Ass'n of Battery Recyclers, Inc. v. E.P.A.*, 716 F.3d 667, 674 (D.C. Cir. 2013)."

Plaintiffs Permapost, Inc. *et al*. will show in this brief that the facts in this case are readily distinguishable from *White Stallion Energy* and the cases on which it relied, and will further show that the *White Stallion Energy* Court's rationale for its holding, as well as the dissenting judge's commentary on that rationale, both <u>strongly support</u> prudential standing for the Plaintiffs in this case.

Page 1 -     **PLAINTIFFS' SUPP. BRIEF IN RESPONSE TO COURT ORDER**

Mark C. Rutzick, Inc.
12402 Myra Virginia Ct
Oak Hill, Virginia 20171
Phone/Fax: 703-870-7347 ● E-mail: markrutzick@rutzick.com

In *White Stallion Energy*, Julander, "an oil and natural gas development, exploration, and production company," *id*. *27, "challenged EPA's decision not to adopt stricter emission standards by requiring 'fuel switching' by [electric-utility generating units] from coal to natural gas." *Id*. *27. Julander does not own any coal- or oil-fired utility units, and is not regulated by the EPA rule. Julander's alleged injury was that EPA's failure to compel coal- or oil-fired utility units to switch to natural gas denied the company the opportunity to sell more natural gas. While the Court found this injury sufficient for Article III standing, the Court found Julander lacked prudential standing under § 112 of the Clean Air Act (CAA) because "Julander's interest in increasing the regulatory burden on others falls outside the zone of interests protected by the CAA ...." *Id*. at 29.

The Court's prudential standing ruling proceeded in three steps:

1. First, "[t]he Supreme Court has instructed that the breadth of the zone of interests varies according to the provisions of law at issue. ... Accordingly, this court must be guided by those of our precedents that have interpreted § 112, and not those applying other statutory provisions, including the APA." *Id*. at *27 (citation and quotation omitted).

2. The Court's then looked at three of its precedents under § 112 of the Clean Air Act where, in each case, an unregulated business challenged EPA's failure to impose a more stringent regulatory burden on its regulated competitors. *Ass'n of Battery Recyclers, Inc.,* 716 F.3d 667; *Cement Kiln Recycling Coalition v. E.P.A.,* 255 F.3d 855, 871 (D.C.Cir. 2001); *Hazardous Waste Treatment Council v. E.P.A.,* 861 F.2d 277, 282 (D.C.Cir. 1988). All three precedents held that a claim by an unregulated business seeking to gain a competitive advantage by obtaining stricter regulation of its regulated competitors was not within the zone of interests of § 112 of the Clean Air Act. The *White Horse Energy* Court found these cases dispositive because "Julander's interest in increasing the regulatory burden on others falls outside the zone of interests protected by the CAA ...." *Id*. at *29.

3. The third step of the Court's analysis considered Julander's contention that it is not a competitor of the regulated coal- or oil-fired utility units, in that it does not generate electric power,

but instead "maintains that it is properly characterized as a vendor to, and not a competitor of, the regulated entities." *Id*.  The Court recognized the standing rights of vendors "'to assert the interest of [regulated] vendees.' *Nat'l Cottonseed Products Ass'n v. Brock,* 825 F.2d 482, 490 (D.C.Cir. 1987) (*citing FAIC Secs., Inc. v. United States,* 768 F.2d 352, 360–61 (D.C.Cir. 1985))." *White Horse Energy* at *29.  The Court rejected vendor standing for Julander because the regulated entities buy coal or oil rather than natural gas, so Julander is not a vendor to those regulated entities: "Julander is not standing in for the interests of its potential vendees, which, in fact, here challenge Julander's petition. Consequently, the interests of Julander and the regulated industry petitioners are not 'two sides of the same coin.' *FAIC Secs.,* 768 F.2d at 359." *White Horse Energy* at *29.

Thus, the *White Horse Energy* holding rests on three legal principles:

1.  For prudential standing, "the breadth of the zone of interests varies according to the provisions of law at issue" in the case.

2.  Under § 112 of the Clean Air Act, a claim by an unregulated business seeking to gain a competitive advantage against its regulated competitors by obtaining stricter regulation of the regulated competitors is not within the zone of interests for prudential standing.

3.  An unregulated vendor has prudential standing to assert the rights of its regulated vendees because their interests are "two sides of the same coin."

**Argument**

**THE TREATED WOOD PRODUCER PLAINTIFFS HAVE PRUDENTIAL STANDING AS VENDORS TO REGULATED PURCHASERS AND USERS OF TREATED WOOD, AND THE TREATED WOOD PRODUCERS DO NOT SEEK TO IMPOSE GREATER REGULATORY BURDEN ON PRODUCERS OF COMPETING PRODUCTS**

The three legal principles that underlie the *White Horse Energy* decision <u>support</u> prudential standing for the Treated Wood Producer plaintiffs in this case (*i.e.*, all plaintiffs except Western Wood Structures, Inc.).

1.  In this case Plaintiffs' Clean Water Act claims arise under 33 U.S.C. § 1344, and there

is no D.C. Circuit precedent addressing prudential standing under the Clean Water Act.  As Plaintiffs showed in their Opposition to the Motion to Dismiss (at 35-36), Congress' primary concern in enacting 33 U.S.C. § 1344 was to provide statutory exemptions for some activities, and a permitting process for other activities, in order to enable the continuation of economic activities that could otherwise be discouraged or prohibited by the Clean Water Act regulatory program.  Like the Endangered Species Act provision in *Bennett v. Spear*, 520 U.S. 154 (1997) that gave prudential standing to irrigation districts and ranchers who were injured by excessively zealous regulation, 33 U.S.C. § 1344 "was drafted at least in part to avoid needless economic dislocation."  *Town of Stratford, Conn, v. Fed. Av. Admin.*, 285 F.3d 84, 88 (D.C. Cir. 2002) (discussing *Bennett v. Spear*).

2.  The central issue in *White Horse Energy* – whether a claim by an unregulated business seeking to gain a competitive advantage by obtaining stricter regulation of its regulated competitors is within the zone of interests for prudential standing – is **not present in this case**.  The Treated Wood Producers are not seeking stricter regulation of the manufacturers of steel, concrete, plastic and untreated wood who are their marketplace competitors – they are seeking to lift a regulatory burden on the use of the products they produce, in order to gain regulatory equality with their competitors.  The Treated Wood Producers have no wish to eliminate nationwide general permits for the competing products; they simply want the same favorable treatment for their own products.  This case simply does not fit the facts of *White Horse Energy.*

3.  *White Horse Energy* affirmed the prudential standing of vendors like the Treated Wood Producers to assert rights of their regulated customers under D.C. Circuit precedent.  *White Horse Energy* at *29, *citing Nat'l Cottonseed Products Ass'n,* 825 F.2d; *FAIC Secs., Inc.,* 768 F.2d 352; *see* Plaintiffs' Opposition to Motion to Dismiss at 4, 36-38.  Thus, even if Judge Kavenaugh's dissent correctly finds "erratic inconsistency in our case law" on prudential standing, *White Horse Energy* at *38, particularly as to whether "the zone of interests test prevents businesses from complaining about allegedly illegal agency under-regulation of their competitor businesses," *Id*. at *43, that

Page 4 -       **PLAINTIFFS' SUPP. BRIEF IN RESPONSE TO COURT ORDER**

inconsistency does not apply to the facts of this case since the Treated Wood Producers are not "complaining about allegedly illegal agency under-regulation of their competitor businesses." In addition, unlike Julander Energy, the Treated Wood Producers seek to obtain that same benefit for their regulated vendees (home owners, home builders, property owners), fully in line with the vendees' interests.

D.C. Circuit law favors prudential standing in this case. No D.C. Circuit precedent holds that a claim to relieve a party from a regulatory burden that is greater than that of its competitors is outside a regulatory statute's zone of interests, and the D.C. Circuit "vendor standing" cases allow unregulated vendors to seek to relieve their vendees of improper regulatory burdens.

4. Plaintiff Western Wood Structures, Inc., as a vendee/customer of the Treated Wood Producers who is directly regulated by the Clean Water Act, has prudential standing whether or not the Treated Wood Producers have vendor standing to assert the rights of their customers. Plaintiffs Opposition to Motion to Dismiss at 28-29, 40-41.

### Conclusion

The motion to dismiss should be denied.

Dated this 28th day of May, 2014.

By:     /s/ Mark C. Rutzick
Mark C. Rutzick, D.C. Bar No. 979547
markrutzick@rutzick.com
Mark C. Rutzick, Inc.
12402 Myra Virginia Ct.
Oak Hill, VA 20171
Telephone/Facsimile: (703) 870-7347
Attorney for Plaintiffs